# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BOARD OF TRUSTEES OF THE
TEAMSTERS LOCAL 631 SECURITY FUND
FOR SOUTHERN NEVADA  et al.,

                Plaintiffs,

      vs.

SHOW PLUS LV, LLC et al.,

              Defendants.

2:14-cv-02129-RCJ-VCF

**ORDER**

This case arises from an alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Pending before the Court is Plaintiffs' Motion for Default Judgment on the Second Amended Complaint ("SAC") (ECF No. 30). For the reasons given herein, the Motion is GRANTED IN PART and DENIED IN PART.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiffs are the Board of Trustees of the Teamsters Local 631 Security Fund for Southern Nevada and the Board of the Teamsters Convention Industry Training Fund (collectively, "Trust Funds"). (SAC ¶ 2, ECF No. 19). It is alleged that Defendant American Polysource, Inc. ("American Polysource"), doing business as Show Plus (USA), signed a collective bargaining agreement ("CBA") with the International Brotherhood of Teamsters Local 631. (*Id.* ¶ 3). Plaintiffs allege that Show Plus LV, LLC ("Show Plus LV") is the alter ego of

American Polysource for the purposes of ERISA and that each is bound by the terms of the CBA. (*Id.* ¶¶ 10–12).

Plaintiffs claim the CBA incorporates the trust agreements establishing the Trust Funds ("Trust Agreements") and that pursuant to the CBA and the Trust Agreements, Defendants are obligated to make their books and records available for contract compliance review. (*Id.* ¶¶ 13–14). Plaintiffs allege that Defendants have failed to comply with this obligation. (*Id.* ¶ 15).

Plaintiffs filed this lawsuit to compel Defendants American Polysource and Show Plus LV to deliver the papers and documents necessary to permit the Trust Funds to perform an audit. (*Id.* ¶¶ 21, 31). Plaintiffs argue that under ERISA Defendants must also pay delinquent contributions, interest, liquidated damages, and attorney's fees. (*Id.* ¶¶ 24, 35). Service of process was performed upon Defendants American Polysource (ECF No. 25) and Show Plus LV (ECF No. 21). Defendants, to date, have not responded, and the Clerk has signed an entry of default against both. (ECF No. 29). Plaintiffs have filed a Motion for Default Judgment against Defendants American Polysource and Show Plus LV whereby they seek $41,665 in outstanding ERISA contributions; $11,487 in interest; $11,487 in liquidated damages; $19,111 in past attorney's fees and costs; and $5,000 in attorney's fees for the anticipated cost of executing judgment. (Motion, 9). After subtracting $5,000 for a previous payment, Plaintiffs seek a total award of $83,750.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 authorizes the district court to enter a default judgment against a party who fails to plead or otherwise defend against an action. *See* Fed. R. Civ. P. 55(a)-(b). The court may consider the following factors when exercising discretion as to the entry of default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of

2

plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The factual allegations of the complaint, except those relating to the amount of damages, are taken as true. *TeleVideo Sys., Inc. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). "Where a court finds that default should be granted, it may award damages if the plaintiff satisfies its burden of proving the damages through evidence." *Bd. of Trs. of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1227 (N.D. Cal. 2014) (citing *TeleVideo Sys., Inc.*, 826 F.2d at 917–18).

## III.   DISCUSSION

The Court agrees that a limited default judgment is appropriate in this case. Service was performed on August 18, 2015 as to American Polysource and on August 20, 2015 as to Show Plus LV via Defendants' registered agents. (Certificates of Service, ECF Nos. 21, 25). Neither American Polysource nor Show Plus LV have filed an answer or motion to dismiss, and nothing indicates that Defendants intend to oppose the allegations against them. Based on the evidence in the record, the Court will grant the motion as to American Polysource but not as to Show Plus LV.

### A.   American Polysource

Plaintiffs allege that Defendant American Polysource is signatory to a collective bargaining agreement with the International Brotherhood of Teamsters Local 631 ("CBA"). (SAC, ¶ 3). Plaintiffs allege that American Polysource has violated the CBA by failing to make its books and records available to Plaintiffs for an audit, and by failing to make required

contributions. (*Id.* at ¶¶ 20, 23). Based on the following analysis of the *Eitel* factors, default judgment is warranted.

**1.      Possibility of Prejudice, Substantive Merits, and Sufficiency of Complaint**

The Court finds that the first, second, and third *Eitel* factors weigh in favor of default judgment. The Trust Funds will likely suffer potential prejudice if default judgment is not entered because Defendants have failed to respond to the SAC. Further, the SAC is sufficient, and its substantive merits are strong.

Plaintiffs have provided a copy of a short-form CBA between the International Brotherhood of Teamsters Local Union No. 631 and "Show Plus USA," which Tony Tao appears to have signed on May 23, 2014 as president of "Show Plus USA." (Short Form CBA, 6–8, ECF No. 30-1). Plaintiffs allege that the CBA, and the trust agreements incorporated therein, require Show Plus (USA) (i.e., American Polysource) to make contributions to the Trust Funds and to make its books and records available for contract compliance review. (SAC, ¶¶ 14, 23–24).

According to the short-form CBA, the parties agreed to be bound by the terms and conditions of the "Global Experience Specialists, Inc. and Freeman Decorating Company Labor Agreement with Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 631" ("CBA Global Experience Specialists"). (*Id.* at 7). That CBA requires the parties to participate in both the Teamsters Convention Industry Training Fund and the Teamsters Local 631 Security Fund for Southern Nevada. (CBA Global Experience Specialists, 82, 110, ECF No. 30-1). The CBA also requires employers to contribute specific amounts to the Trust Funds. (*Id.*). The agreements for the Trust Funds themselves, which the CBA incorporates, also require employer contributions to the Trust Funds (Agreement and Declaration of Trust: Teamsters Convention Industry Training Fund ("Agreement Training Fund"), 139–140, ECF No. 30-1; Agreement and

Declaration of Trust for the Teamsters Local 631 Security Fund for Southern Nevada ("Agreement Security Fund"), 126, ECF No. 30-1). Further, the agreements for the Trust Funds give the Trust Funds authority to require an employer's "best efforts to secure compliance with any reasonable request to provide" "any information, data, or documents reasonably relevant to and suitable for the purposes of the Board's administration of the Benefit Plans." (*Id.* 129, 142–143). In addition, the agreements give the Trust Funds the right

> to audit the books and records of any Employer as may be necessary to determine if all liabilities of such Employer to the Trustees have been paid, and to determine that the correct contributions have been received for all persons for whom the Employer is required to make contributions. The Employer shall make such books and records available at all reasonable times and places so that such audits may be conducted.

(*Id.* 129, 143).

Plaintiffs sent correspondence to American Polysource informing it of its obligations to contribute to the Trust Funds and to allow Plaintiffs to conduct an audit of its records for the period of May 1, 2014 to September 30, 2014. (Letter to American Polysource, 168–169, ECF No. 30-1). Plaintiffs now allege that American Polysource failed to meet its obligations. (SAC, ¶¶ 19–20, 23–24). Taking these factual allegations as true, the SAC is sufficient, and its substantive merits are strong.

### 2. Sum of Money at Stake

With this factor, the Court considers "whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.,* 725 F.Supp. 2d 916, 921 (N.D. Cal. 2010). Plaintiffs seek a total of $83,750 in damages. The amount sought is proportional to the harm caused by American Polysource's failure to pay the contributions under the CBA; thus, this factor weighs in favor of entry of default judgment.

///

5

### 3.    Possibility of Dispute Concerning Material Facts

As indicated above, Plaintiffs have provided sufficient facts to make its case. Defendants have not challenged those facts, and the Court takes as true the facts in the SAC. Accordingly, no genuine dispute of material facts would preclude granting the motion.

### 4.    Excusable Neglect

No facts or evidence indicate that default has resulted from excusable neglect. This factor favors entry of default judgment.

### 5.    Decision on the Merits

According to the seventh *Eitel* factor, "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472. However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citation omitted). Further, Defendants' failure to answer Plaintiffs' SAC makes a decision on the merits impractical, if not impossible. Thus, this factor does not preclude the Court from entering default judgment against American Polysource.

The *Eitel* factors weigh in favor of default judgment. The motion is granted as to American Polysource.

### B.    Show Plus LV

Plaintiffs allege that as the alter ego of American Polysource, Show Plus LV is also liable for failing to meet its obligations to make its books and records available and to make contributions to the Trust Funds. (SAC, ¶¶ 11, 12, 15). As evidence that Show Plus LV is the alter ego of American Polysource, Plaintiffs allege that American Polysource and Show Plus LV share the same officers and employees, (*id.* ¶¶ 5–6); they "perform the same type of work," (*id.* ¶

7); "American Polysource listed Show Plus LV's address as its own on the CBA," (*id.* ¶ 8); and "American Polysource responded multiple times to the Trust Funds' emails sent to Show Plus LV" (*id.* ¶ 5–9). In an order addressing Plaintiffs' prior motion for default judgment, the Court indicated it would not enter default judgment against Show Plus LV on the basis of Plaintiffs' alter ego theory because the Complaint did not conclusively establish their theory. (*See* Order Denying Motion for Entry of Default Judgment, 4, ECF No. 16); *see also Bd. of Trustees v. Road & Highway Builders, LLC*, No. 2:11-cv-1579-JCM-VCF, 2013 WL 1293127, at *2 n.2 (D. Nev. 2013) (Mahan, J.). In this Motion, the Court still finds no basis for holding Show Plus LV liable as the alter ego of American Polysource.

The alter ego test has two parts. First, the plaintiff must show the two entities are a single employer based on the following criteria: (1) common ownership, (2) common management, (3) interrelation of operations, and (4) centralized control of labor relations. *UA Local 343 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Industry of the U.S. & Canada, AFL–CIO v. Nor–Cal Plumbing, Inc.,* 48 F.3d 1465, 1471 (9th Cir. 1994). Notably,

> [n]o one factor is controlling nor need all criteria be present. The most important factor is centralized control of labor relations, which can be demonstrated either by showing common control of day-to-day labor matters or by showing that the person in charge of the union company's labor relations made the decision that the second company would be non-union.

*Id.* (internal citations omitted). Second, the plaintiff must show the nonunion firm "was being used 'in a sham effort to avoid collective bargaining obligations' rather than for the pursuit of legitimate business objectives untainted by 'union animus.'" *Id.* at 1470 (quotations omitted); *see also Resilient Floor Covering Pension Fund v. M&M Installation, Inc.,* 630 F.3d 848, 852 (9th Cir. 2010) (stating that "[t]he *Nor–Cal* alter ego test requires proof (1) that the two firms have

'common ownership, management, operations, and labor relations,' and (2) that the non-union firm is used 'in a sham effort to avoid collective bargaining obligations'").

No facts or evidence in the SAC or Plaintiffs' Motion establish that Show Plus LV is American Polysource's alter ego. Plaintiffs have alleged that American Polysource and Show Plus LV have common ownership, common management, and potentially interrelated operations, but they have not shown there is centralized control of labor relations. Although not all factors must be present, the most important factor—centralized control of labor relations—is not present. As a result, the evidence offered is insufficient to show the entities are a single employer. Even if the evidence were sufficient to show they are a single employer, Plaintiffs provide no evidence for their allegation that "Show Plus LV is a sham entity that has been and is being used to avoid American Polysource's collectively-bargained obligations." (SAC, ¶ 10). Common ownership, management, and operations do not alone prove Show Plus LV is a sham entity. Plaintiffs must provide more evidence. The Court rejects Plaintiffs' argument that Show Plus LV is the alter ego of American Polysource and, thus, denies the motion as to Show Plus LV.

### C.   Damages

Because Plaintiffs have established liability as to American Polysource, the Court must determine damages. Under ERISA, an employee benefit plan that obtains judgment in its favor in an action for unpaid contributions under 29 U.S.C. § 1145 is entitled to the following relief:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

     (1) interest on the unpaid contributions, or

(2) liquidated damages provided for under the plan in an amount not in excess of

20 percent . . . of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). This section also provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." *Id.*

Plaintiffs assert that as a result of Defendants' failure to provide access to their books and records, the Court must rely on provisions in the Trust Agreements rather than calculate actual damages. An amendment to the collection policy and procedures of the Trust Agreements, signed by the co-chairmen of the Trust Funds, provides:

> [i]f there are no facts, records or information available, then the average annual contributions reported by the employer over the previous three years prior to the Audit review period or $100,000 (whichever is higher) in contributions, plus applicable interest and liquidated damages, shall be deemed due for each calendar year covered by the Audit review period.

(Teamsters Local 631 Joint Trust Funds' Amended and Restated Collection Policy and Procedures, 156, ECF No. 30-1). Notably, though, this amendment was adopted in April 2015, (*see id.* at 149), months after the filing of the initial Complaint on December 16, 2014. Thus, the amendment has no effect in determining damages for this suit. Plaintiffs cannot adopt a policy that retroactively binds Defendants in a suit filed prior to the policy change. The Trust Agreements, as effective at the time of filing, including amendments made in 1995 and 1999, do not designate a presumptive amount of damages to be applied when an employer fails to meet its obligation to provide facts, records, or information. (*See* Agreement Security Fund, 127–128, 132; Agreement Training Fund, 141–142, 147). Because the Court cannot determine damages

based on the facts and evidence available, the Court will schedule a damages hearing to be held at a forthcoming date and time.

      **D.**    **Tony Tao**

      Plaintiffs allege that Defendant Tony Tao, the officer responsible for all personnel decisions of American Polysource and Show Plus LV, has breached his duty as an ERISA fiduciary and is liable to make the Trust Funds whole for any loss resulting from the breach of his duty. (SAC, ¶¶ 37–45). Plaintiffs have moved for entry of default against Defendant Tony Tao (ECF No. 28). Service of process was performed on Defendant Tony Tao on August 20, 2015 (ECF No. 24). Defendant, to date, has not responded; thus, the Clerk shall enter default against Tony Tao.

<strong>CONCLUSION</strong>

      IT IS HEREBY ORDERED that Plaintiffs' Motion for Entry of Default Judgment (ECF No. 30) is GRANTED  as to Defendant American Polysource and DENIED as to Defendant Show Plus LV.

      IT IS FURTHER ORDERED that Defendant American Polysource deliver or make available to the Trust Funds all paper and documentation necessary for their auditing purposes.

      IT IS FURTHER ORDERED that Plaintiffs' Motion for Entry of Default (ECF No. 28) is GRANTED as to Defendant Tony Tao.

      IT IS FURTHER ORDERED that a Motion hearing to determine damages associated with the entry of default judgment against Defendant American Polysource is set for 10:00 AM, Friday, April 15, 2016, in LAS VEGAS COURTROOM TBD, before Judge Robert C. Jones.

      IT IS SO ORDERED.

///

Dated this 16th day of February, 2016.

 

 

 

 

                                                     ROBERT C. JONES

                                         United States District Judge